IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FRED LEE DIXON     *
    *
v.     *     Civil Case No. JKB-16-3288
    *
COMMISSIONER, SOCIAL SECURITY     *
    *
*************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014–01, the above-referenced case has been referred to me for review of the Commissioner's dispositive motion, (ECF No. 16), and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). The Plaintiff, Fred Lee Dixon, who is appearing *pro se,* did not file a motion for summary judgment but filed a response to the Commissioner's Motion for Summary Judgment.[1] I have considered the Commissioner's Motion and Mr. Dixon's response. [ECF Nos. 16, 18]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I recommend that the Court grant the Commissioner's motion and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g).

Mr. Dixon filed a claim for Supplemental Security Income ("SSI") on August 2, 2012, alleging a disability onset date of February 2, 2012. (Tr. 129-37). His claim was denied initially and on reconsideration. (Tr. 76-79, 85-86). A hearing, at which Mr. Dixon was represented by counsel, was held on January 29, 2015, before an Administrative Law Judge ("ALJ"). (Tr. 28-

---

[1] After the Commissioner filed her Motion for Summary Judgment on April 17, 2017, [ECF No. 16], a Rule 12/56 letter was mailed to Mr. Dixon, advising him of the potential consequences of failure to oppose the Commissioner's motion. (ECF No. 17). Mr. Dixon then timely filed his response.

56). Following the hearing, the ALJ determined that Mr. Dixon was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 6-26). The Appeals Council denied Mr. Dixon's request for review, (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Mr. Dixon suffered from the severe impairments of "post-traumatic stress disorder; possible anti-social personality disorder; history of cannabis abuse; borderline intellectual functioning." (Tr. 11). Despite these impairments, the ALJ determined that Mr. Dixon retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels. However, the claimant is limited to simple, routine, repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and few, if any, workplace changes. Additionally, the claimant can have only occasional interaction with the public and coworkers, and requires isolated work with only occasional supervision.

(Tr. 14). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Dixon could perform jobs existing in significant numbers in the national economy and that, therefore, he was not disabled. (Tr. 21-22).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). I have also considered all of the arguments raised by Mr. Dixon's prior attorney in his May 20, 2015 letter to the Appeals Council. (Tr. 211-12). For the reasons described below, substantial evidence supports the ALJ's decision.

The ALJ proceeded in accordance with applicable law at all five steps of the sequential evaluation. The ALJ ruled in Mr. Dixon's favor at step one and determined that he has not engaged in substantial gainful activity since his application date. (Tr. 11); *see* 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ then considered the severity of each of the impairments that Mr. Dixon claimed prevented him from working. *See* 20 C.F.R. § 416.920(a)(4)(ii). Notably, the ALJ found Mr. Dixon's toothaches, headaches, occasional cold and sore throat symptoms, alleged lead toxicity, and back impairment to be non-severe. (Tr. 11). With respect to the toothaches, headaches, and cold and sore throat symptoms, the ALJ determined them to be "transient" and treatable with conservative measures. *Id.* The ALJ noted that two blood tests showed no evidence of lead toxicity. *Id.* The ALJ provided a more thorough analysis of Mr. Dixon's alleged back impairment, noting that despite complaints of back pain, the physical examinations and objective tests were either normal or only mildly abnormal. (Tr. 15-16). The ALJ concluded that "objective findings do not suggest any significant limitation," that "complaints of back pain have been treated with relatively conservative measures," and that "the claimant continued to exercise by walking or even running." (Tr. 16). In light of that evidence, the ALJ found Mr. Dixon's back impairment to be non-severe. *Id.* However, after finding at least one of Mr. Dixon's impairments severe, *id.*, the ALJ continued with the sequential evaluation and considered, in assessing Mr. Dixon's RFC, the extent to which his impairments limited his ability to work.

At step three, the ALJ determined that Mr. Dixon's severe mental health impairments did not meet the specific requirements of, or medically equal the criteria of, any listings. (Tr. 12-14). In particular, the ALJ considered the specific requirements of Listing 12.04 (affective disorders), 12.06 (anxiety related disorders), 12.08 (personality disorders), 12.05 (borderline intellectual

3

functioning), and 12.09 (substance addiction disorders). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06, 12.08, 12.05, 12.09. The first three Listings require proof of the same set of "paragraph B" criteria, and the ALJ concluded that Mr. Dixon had mild restriction in activities of daily living, moderate difficulties in social functioning and concentration, persistence, or pace, and no episodes of decompensation of extended duration. (Tr. 12-13). The ALJ supported those assessments with citations to the evidence of record. *Id.* Under each of the three listings, a claimant would need to show at least two areas of marked difficulty, or repeated episodes of decompensation, to meet the listing criteria. Accordingly, the ALJ did not err in his conclusion. With respect to Listing 12.09, the ALJ concluded that "the record does not establish the requisite level of behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system." (Tr. 14). Finally, with respect to Listing 12.05, the ALJ ruled that Mr. Dixon did not establish "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, before age 22." (Tr. 13). The ALJ noted that academic records showed that Mr. Dixon was on a regular curriculum at school, but had excessive absences resulting in poor academic performance. *Id.* Moreover, the ALJ cited Mr. Dixon's decision to leave his grandmother's house to join the Job Corps at age 16 as "evidencing a high degree of independence." *Id.* Mr. Dixon's prior attorney argued that the ALJ did not specifically evaluate Listings 12.05(C) or 12.05(D), but each of those subsections still requires evidence of deficits in adaptive functioning prior to the age of 22. Accordingly, the ALJ's analysis adequately encompassed those listings, and no listings are met.

In considering Mr. Dixon's RFC, the ALJ summarized his subjective complaints from his hearing testimony. (Tr. 15). The ALJ then engaged in a detailed review of Mr. Dixon's medical

4

records and objective testing. (Tr. 15-18). As discussed above, the ALJ began with a detailed recitation of the medical evidence of Mr. Dixon's back impairment, ultimately concluding that the impairment was non-severe. (Tr. 15-16). As for the mental impairments, the ALJ again summarized the medical treatment, including the relatively mild findings of depression upon clinical examination. (Tr. 16-17). The ALJ reviewed the psychiatric consultative examination, which included again relatively minor findings, reports of basically normal activities of daily living, and psychological testing resulting in a borderline full-scale IQ score of 70. (Tr. 17). The ALJ noted that the consultative examiner diagnosed "mood disorder, cannabis abuse, and borderline intellectual functioning." *Id*. The ALJ also discussed that the consultative examiner had asked that lead toxicity be ruled out, but noted that two distinct blood tests had been negative. *Id.*

Finally, the ALJ assessed the treatment notes and opinions from Mr. Dixon's treating psychiatrist, Dr. Sarah M. Gillman. (Tr. 17). The ALJ noted that during the initial appointment, Mr. Dixon presented with few significant symptoms except a depressed and irritable mood, and irritated affect. *Id.* Mr. Dixon had reported to Dr. Gillman "that he was trying to work, but it was hard to find work because of prior gun charges." *Id.* In light of Dr. Gillman's assessment of Mr. Dixon's exposure to violence involving family members, she diagnosed post-traumatic stress disorder, major depressive disorder, and cannabis use disorder, with a possibility of antisocial personality disorder. (Tr. 18).

The ALJ then reviewed Mr. Dixon's self-reported activities of daily living, which demonstrated a high degree of independence, and a work history exhibiting "evidence that the claimant stopped working for reasons not related to the allegedly disabling impairments." (Tr. 19). The ALJ also evaluated the opinion evidence, assigning some weight to the opinions of the

non-examining State agency physicians. (Tr. 19). The ALJ assigned "little weight" to the January 6, 2015 opinion of the treating psychiatrist, Dr. Gillman, an the grounds that (1) the opinion is not well supported by the less severe findings in the examination notes from her examination of Mr. Dixon; (2) Dr. Gillman did not have a significant longitudinal treatment history with Mr. Dixon, having begun treatment in December, 2014; and (3) the opinion is contradicted by the other record evidence including Mr. Dixon's activities of daily living and his conservative treatment. (Tr. 19-20). Based on this evidence, the ALJ found that Mr. Dixon was able to perform the work described in his RFC. (Tr. 20).

Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 404 (1971). Even if there is other evidence that may support Mr. Dixon's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In considering the entire record, and given the evidence outlined above, I find the ALJ's RFC determination was supported by substantial evidence.

Next, the ALJ determined that Mr. Dixon had past relevant work as a warehouse worker, concrete finisher, and laborer, but that he would be unable to perform any of those jobs based on his RFC. (Tr. 20). Accordingly, the ALJ proceeded to step five, where he considered the impact of Mr. Dixon's age and level of education on his ability to adjust to new work. (Tr. 20-21). In doing so, the ALJ cited the VE's testimony that a person with Mr. Dixon's RFC would be capable of performing the jobs of "Night cleaner," "Sorter/folder," "Janitor/cleaner," and "Order picker/filler." (Tr. 21). Based on the VE's testimony, the ALJ concluded that Mr. Dixon was

6

capable of successfully adjusting to other work that exists in significant numbers in the national economy. *Id.* Accordingly, the ALJ's determination was supported by substantial evidence.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that the Court GRANT Defendant's Motion for Summary Judgment, [ECF No. 16]; and order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 301.5(b).

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated: May 15, 2017                                      /s/
                                                    Stephanie A. Gallagher
                                                    United States Magistrate Judge